**UNITED STATES DISTRICT COURT**          **EASTERN DISTRICT OF TEXAS**

| | | |
|---|---|---|
| T.M. SUNDARAM and RADHA SUNDARAM, individually and as co-trustees of the T.M. and Radha M. Sundaram Revocable Trust, | § § § § § | |
| Plaintiffs, | § § | |
| *versus* | § § | CIVIL ACTION NO. 1:06-CV-712 |
| RONALD NEMETH, | § § | |
| Defendant/Third-Party Plaintiff, | § § | |
| *versus* | § § | |
| SN BEAUMONT HOSPITALITY, LLC, SUNDARAM BUILDERS, INC., and TOTAL MANAGEMENT SYSTEMS, INC., | § § § § | |
| Third-Party Defendants. | § | |

**MEMORANDUM AND ORDER**

Pending before the court are Plaintiffs T.M. Sundaram and Radha Sundaram's ("the Sundarams") Motion for Partial Summary Judgment (#33) and Defendant Ronald Nemeth's ("Nemeth") Motion for Partial Summary Judgment (#38). The parties' cross-motions seek a determination by the court regarding the legal effects of their Limited Co-Ownership Agreement pertaining to a Holiday Inn located in Beaumont, Texas. Having reviewed the pending motions, the submissions of the parties, the pleadings, and the applicable law, the court is of the opinion that partial summary judgment in favor of Nemeth is warranted.

I.     Background

On or about July 23, 2004, the Sundarams and Nemeth purchased a Holiday Inn hotel located at 2095 North Eleventh Street in Beaumont, Texas, and executed a Limited Co-Ownership Agreement ("Agreement") to govern the ownership and management of the property.   The Agreement was signed by Plaintiff T.M. Sundaram, as co-tenant and on behalf of the family of T.M. Sundaram, and Nemeth, as co-tenant and on behalf of the family of Ron Nemeth.  Pursuant to the Agreement, the Ron Nemeth family held one-third of the ownership interest in the hotel, and the Sundaram family held two-thirds of the ownership interest.

As part of the purchase, the parties formed SN Beaumont Hospitality, L.L.C. ("SN Beaumont"), to operate the business and hold bank accounts and other hotel property.  There is no evidence that SN Beaumont issued shares of stock as contemplated by the Agreement; however, it appears that the Nemeth family owns one-third of the company and the Sundaram family owns the remaining two-thirds.  The parties also designated Total Management Systems, Inc. ("TMS"), which is owned and operated by the Sundarams, as the Agent responsible for managing the property.  In its capacity as Agent, TMS was responsible for the collection and distribution of funds associated with the hotel, as specified in the parties' Agreement, as well as the timely disbursement of property expenses.

Article 4 of the parties' Agreement governs the payment of property expenses.  Pursuant to Section 4.1, the Sundarams and Nemeth "shall apportion all debts and expensed [sic] that they incur in connection with the Property ("Property Expenses") in proportion to their respective ownership interests."  Additionally, Section 4.2 provides:

> Whenever the Agent determines that such Property expenses must be paid in an
> amount which exceeds the Co-tenant's share of income from the property then held

2

by the agent, the Agent shall give written notice to the Co-Tenants, which notice shall set forth (a) the total amount required to pay the property expenses and (b) such co-tenant's proportionate share thereof.  The Co-Tenants shall have three business days from the date such notice is given to deliver their share of the required funds to the Agent.

Under Section 4.3, if a co-tenant does not timely pay its share of the property expenses, TMS sends the co-tenant written notice of the delinquency and gives the co-tenant an additional two days to pay its share of the expenses.  If the co-tenant still fails make a timely payment, it becomes a defaulting co-tenant.  Finally, Section 4.5 permits a non-defaulting co-tenant to pay all or  part of a defaulting co-tenant's share of the delinquent property expenses, which is then treated as a co-tenant loan requiring repayment with interest at the prime rate of interest plus six percent.

On July 23, 2004, the Sundarams, as trustees of the T.M. and Radha M. Sundaram Revocable Trust ("Sundaram Trust"), entered into a License Agreement with Holiday Hospitality Franchising, Inc. ("Holiday Franchising"), thereby allowing the Sundarams to operate the Beaumont property as a Holiday Inn.   Attached to the License Agreement was a Property Improvement Plan ("PIP"), which required that the Sundarams complete substantial repairs and renovations to the hotel as a condition of maintaining their license.  Additionally, Nemeth and his wife, Julie K. Nemeth, signed a Guaranty Agreement warranting that all of the Sundarams' obligations under the License Agreement would be punctually paid and performed.

According to the Sundarams, on October 29, 2004, SN Beaumont and TMS entered into a contract with Sundaram Builders, Inc. ("Sundaram Builders"), to complete the renovations to the hotel in compliance with the PIP.  In addition to all labor, materials, overhead, and travel expenses, the contract provided for a 15% contractor fee to Sundaram Builders.  The contract is signed by T.M. Sundaram, on behalf of Owner/Agent/Member, Radha M. Sundaram, as Member,

3

and Prakash Sundaram ("Prakash"), who is Senior Vice President of TMS, as General Contractor. The contract also bears a second signature of T.M. Sundaram, followed by the typewritten language, "Agent acknowledges that he has telephonically informed the Partner, Ron Nemeth." Nemeth, however, vigorously denies receiving notice of this contract, claiming that he had never heard of Sundaram Builders prior to the summer of 2006 and asserting that the alleged contract is fraudulent and backdated by the Sundarams.

Although the parties disagree on the specific details, it appears that renovations to the hotel were stalled in part due to the effects of Hurricane Rita, which struck Beaumont on September 24, 2005. On or about June 14, 2006, the Sundarams received a letter from Ted McKinzie, a property improvement consultant affiliated with Holiday Franchising, stating that the hotel improvements required by the PIP were still incomplete. As a result of their default, the Sundarams signed a Temporary Removal Agreement with Holiday Franchising on July 15, 2006, allowing them until September 12, 2006, to perform the work required by the PIP and comply with all franchise standards. The Temporary Removal Agreement also bears the signatures of Nemeth and his wife. During the period from July 24, 2006, to September 12, 2006, the Sundarams' license to operate the hotel as a Holiday Inn was temporarily revoked.

During August 2006, the parties exchanged increasingly hostile correspondence regarding the payment of the construction costs purportedly necessary for compliance with the PIP. In particular, on August 1, 2006, Prakash sent an e-mail to Nemeth stating that approximately $460,000.00 was needed to complete the renovations, excluding the 15% contractor fee, which Prakash offered to delay collecting until a later date. He also attached a spreadsheet in an effort to itemize the specific expenses, although he clarified that some of the expenses were budgeted

4

amounts which were subject to revision once final bids were received.  Prakash further explained that the Sundarams were prepared to advance their two-thirds share of the cost, $306,666.68, and that $153,333.34 was needed from Nemeth.

On August 3, 2006, Nemeth responded to T.M. Sundaram and Prakash via e-mail, alleging that the property was being mismanaged and expressing his frustration that the Sundarams were seeking additional funds.  He also claimed that none of the documentation he had concerning the property contained an agreement for a 15% contractor fee.  Nevertheless, Nemeth offered to place his one-third share of the funds into an escrow account for subsequent distribution once the Sundarams provided him with the following information:  (1) proof that Nemeth was obligated to pay a 15% contractor fee; (2)  all underlying documents related to the spreadsheet of expenses, including estimates, bids, and receipts; (3) information on the contractors and workers being used on the project; and (4) all construction plans, along with the agreements with the general contractor and his subcontractors.

On August 8, 2006, T.M. Sundaram responded to Nemeth with another e-mail, which read "Notice of Default and Notice to foreclosure/walk-out" in the subject line.  The e-mail advised Nemeth that Prakash's e-mail of August 1 was in accordance with Section 4.2 of the Agreement and that Nemeth had failed to provide his share of the property expenses in a timely fashion.  T.M. Sundaram then stated that his current e-mail was a written notice of delinquency pursuant to Section 4.3 and gave Nemeth an additional two days to provide the funds or he would be deemed a defaulting co-tenant.  He also asserted that, because Nemeth refused Prakash's prior offer to defer payment of the contractor fee, his required one-third share would include the 15%

fee.  Following the above communications, it appears that the total cost of the hotel improvements continued to increase and the relationship between the parties further deteriorated.

According to the Sundarams, TMS finally determined that a total of $900,000.00 was required to fund the improvements.   When Nemeth failed to pay one-third of the cost, the Sundarams declared him a defaulting co-tenant under the Agreement and advanced his alleged $300,000.00 share as a co-tenant loan pursuant to Section 4.5.  Specifically, as evidenced by two deposit slips attached to their complaint, the Sundarams deposited $500,000.00 into SN Beaumont's bank account on August 18, 2006, and an additional $400,000.00 on August 28, 2006. Ultimately, the Sundarams complied with the September 12, 2006, deadline imposed by the Temporary Removal Agreement, and their license to operate the hotel as a Holiday Inn was restored.

On September 15, 2006, the Sundarams filed their Original Petition against Nemeth in the 172nd Judicial District Court of Jefferson County, Texas, and Nemeth removed the case to this court on the basis of diversity jurisdiction on November 13, 2006.  In their Second Amended Complaint, filed on April 30, 2007, the Sundarams, individually and as co-trustees of Sundaram Trust, asserted a claim for breach of contract and sought recovery of the $300,000.00 they allegedly loaned to Nemeth plus interest at the rate specified in the parties' Agreement.[1]   In response, Nemeth filed his Second Amended Answer and Counterclaim against the Sundarams on May 11, 2007, requesting damages for breach of contract, conversion, breach of fiduciary and

---

[1] The court notes that since the filing of the instant motions for summary judgment in August 2007, the pleadings in this lawsuit have been amended substantially.  In particular, the most recent pleadings include allegations concerning the discovery of mold in the hotel during the summer of 2006 and complications arising from the sale of the property on September 28, 2007.  The court finds it unnecessary to address these issues at this time.

6

partnership duties, and conspiracy to breach said duties.[2]  Nemeth also seeks a declaratory judgment that "expenses" within the meaning of the parties' Agreement do not include capital expenditures.

On August 17, 2007, the Sundarams filed their motion for partial summary judgment, requesting that the court determine whether Article 4 of the parties' Agreement obligates Nemeth to pay one-third of the cost of the repairs and renovations that were required to comply with the PIP and Temporary Removal Agreement.  In essence, it appears that they are disputing Nemeth's assertion that the term "expenses" in the Agreement does not include capital expenditures.  The Sundarams do not, however, seek summary judgment with respect to the amount that may be owed by Nemeth, as they concede that genuine issues of material fact exist as to whether certain items should be included in the total cost and the amounts paid or incurred for those items.

On August 30, 2007, Nemeth responded to the Sundarams' motion and filed his cross-motion for partial summary judgment.  At the outset, Nemeth objects to the Sundarams' request for summary judgment on the grounds that they are actually seeking a declaratory judgment as to Nemeth's obligations under the Agreement, a form of relief not requested in their amended complaint.  Nemeth, therefore, construes Plaintiffs' motion as a request for summary judgment on their breach of contract claim.  He further responds that the Agreement obligates him only to pay, upon proper notice, his proportionate share of debts and expenses incurred that could not be paid by cash on hand—not future obligations not yet incurred.  He also argues that the Sundarams,

---

[2] Nemeth also filed a Third-Party Complaint against Sundaram Builders, TMS, and SN Beaumont, alleging claims similar to those contained in his counterclaim against the Sundarams.  In addition, Nemeth asserted a claim for violations of the Texas Deceptive Trade Practices Act.  These entities subsequently filed counterclaims against Nemeth.

as individuals, are not co-tenants under the Agreement and, therefore, could not extend him a co-tenant loan.  In his motion for partial summary judgment, Nemeth requests that the court find that he did not become a defaulting co-tenant under the Agreement and that the Sundarams, as individuals, cannot make a co-tenant loan under Section 4.5.

II.   Analysis

    A.   Summary Judgment Standard

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c).  The party seeking summary judgment bears the initial burden of informing the court of the basis for his motion and identifying those portions of the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any, which he believes demonstrate the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Warfield v. Byron*, 436 F.3d 551, 557 (5th Cir. 2006); *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *Martinez v. Schlumberger, Ltd.*, 338 F.3d 407, 411 (5th Cir. 2003); *Terrebonne Parish Sch. Bd. v. Mobil Oil Corp.*, 310 F.3d 870, 877 (5th Cir. 2002).

"A fact is '*material*' if it '*might affect* the outcome of the suit under governing law.'" *Bazan ex rel. Bazan v. Hidalgo County*, 246 F.3d 481, 489 (5th Cir. 2001) (emphasis in original) (quoting *Anderson*, 477 U.S. at 248); *accord Cooper Tire & Rubber Co. v. Farese*, 423 F.3d 446, 454 (5th Cir. 2005); *Harken Exploration Co. v. Sphere Drake Ins. PLC*, 261 F.3d 466, 471 (5th

8

Cir. 2001); *Merritt-Campbell, Inc. v. RxP Prods., Inc.*, 164 F.3d 957, 961 (5th Cir. 1999); *Burgos v. Southwestern Bell Tel. Co.*, 20 F.3d 633, 635 (5th Cir. 1994). "Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. "An issue is '*genuine*' if it is real and substantial, as opposed to merely formal, pretended, or a sham." *Bazan*, 246 F.3d at 489 (emphasis in original). Thus, a genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *accord EMCASCO Ins. Co. v. American Int'l Specialty Lines Ins. Co.*, 438 F.3d 519, 523 (5th Cir. 2006); *Cooper Tire & Rubber Co.*, 423 F.3d at 454; *Harken Exploration Co.*, 261 F.3d at 471; *Merritt-Campbell, Inc.*, 164 F.3d at 961. The moving party, however, need not negate the elements of the nonmovant's case. *See Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005); *Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996) (citing *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)).

Once a proper motion has been made, the nonmoving party may not rest upon mere allegations or denials in the pleadings but must present affirmative evidence, setting forth specific facts, to show the existence of a genuine issue for trial. *Celotex Corp.*, 477 U.S. at 322 n.3 (quoting FED. R. CIV. P. 56(e)); *Anderson*, 477 U.S. at 256; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n.11 (1986); *EMCASCO Ins. Co.*, 438 F.3d at 523; *Smith ex rel. Estate of Smith v. United States*, 391 F.3d 621, 625 (5th Cir. 2004); *Malacara v. Garber*, 353 F.3d 393, 404 (5th Cir. 2003); *Rushing v. Kansas City S. Ry. Co.*, 185 F.3d 496, 505 (5th Cir. 1999), *cert. denied*, 528 U.S. 1160 (2000). "[T]he court must review the record 'taken as a whole.'" *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) (quoting *Matsushita Elec. Indus. Co.*, 475 U.S. at 587); *see Riverwood Int'l Corp. v. Employers Ins. of*

9

*Wausau*, 420 F.3d 378, 382 (5th Cir. 2005).  All the evidence must be construed "in the light most favorable to the non-moving party without weighing the evidence, assessing its probative value, or resolving any factual disputes." *Williams v. Time Warner Operation, Inc.*, 98 F.3d 179, 181 (5th Cir. 1996); *see Reeves*, 530 U.S. at 150; *Lincoln Gen. Ins. Co.*, 401 F.3d at 350; *Smith*, 391 F.3d at 624; *Malacara*, 353 F.3d at 398; *Brown v. City of Houston*, 337 F.3d 539, 541 (5th Cir. 2003); *Harken Exploration Co.*, 261 F.3d at 471; *Daniels v. City of Arlington*, 246 F.3d 500, 502 (5th Cir.), *cert. denied*, 534 U.S. 951 (2001).  The evidence of the nonmovant is to be believed, with all justifiable inferences drawn and all reasonable doubts resolved in his favor. *Palmer v. BRG of Ga., Inc.*, 498 U.S. 46, 49 n.5 (1990) (citing *Anderson*, 477 U.S. at 255); *Shields v. Twiss*, 389 F.3d 142, 150 (5th Cir. 2004); *Martin v. Alamo Cmty. Coll. Dist.*, 353 F.3d 409, 412 (5th Cir. 2003); *Martinez*, 338 F.3d at 411; *Gowesky v. Singing River Hosp. Sys.*, 321 F.3d 503, 507 (5th Cir.), *cert. denied*, 540 U.S. 815 (2003); *Chaplin v. NationsCredit Corp.*, 307 F.3d 368, 372 (5th Cir. 2002).  The evidence is construed "in favor of the nonmoving party, however, only when an actual controversy exists, that is, when both parties have submitted evidence of contradictory facts." *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 525 (5th Cir. 1999); *accord Boudreaux*, 402 F.3d at 540; *Little*, 37 F.3d at 1075.

Furthermore, "'only *reasonable* inferences can be drawn from the evidence in favor of the nonmoving party.'" *Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451, 469 n.14 (1992) (emphasis in original) (quoting *H.L. Hayden Co. of N.Y., Inc. v. Siemens Med. Sys., Inc.*, 879 F.2d 1005, 1012 (2d Cir. 1989)).  "If the [nonmoving party's] theory is . . . senseless, no reasonable jury could find in its favor, and summary judgment should be granted." *Id.* at 468-69. The nonmovant's burden is not satisfied by "'some metaphysical doubt as to the material facts,'

by 'conclusory allegations,' by 'unsubstantiated assertions,'" by speculation, by the mere existence

of some alleged factual dispute, or "by only a 'scintilla' of evidence." *Little*, 37 F.3d at 1075

(quoting *Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 888 (1990); *Matsushita Elec. Indus.*

*Co.*, 475 U.S. at 586; *Hopper v. Frank*, 16 F.3d 92, 97 (5th Cir. 1994); *Davis v. Chevron U.S.A.,*

*Inc.,* 14 F.3d 1082, 1086 (5th Cir. 1994)); *accord Warfield*, 436 F.3d at 557; *Boudreaux*, 402

F.3d at 540; *Wallace*, 80 F.3d at 1047.  "Unsubstantiated assertions, improbable inferences, and

unsupported speculation are not sufficient to defeat a motion for summary judgment." *Brown*, 337

F.3d at 541; *accord Hugh Symons Group, plc v. Motorola, Inc.*,  292 F.3d 466, 468 (5th Cir.),

*cert. denied*, 537 U.S. 950 (2002); *see Hockman v. Westward Commc'ns, LLC*, 407 F.3d 317, 332

(5th Cir. 2004); *Bridgmon v. Array Sys. Corp.*, 325 F.3d 572, 577 (5th Cir. 2003).

Summary judgment is mandated if the nonmovant fails to make a showing sufficient to

establish the existence of an element essential to his case on which he bears the burden of proof

at trial.  *Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993); *Celotex Corp.*, 477 U.S. at 322;

*EMCASCO Ins. Co.*, 438 F.3d at 523; *Cutrera v. Board of Supervisors of La. State Univ.*, 429

F.3d 108, 110 (5th Cir. 2005); *Patrick v. Ridge*, 394 F.3d 311, 315 (5th Cir. 2004).  "In such a

situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof

concerning an essential element of the nonmoving party's case necessarily renders all other facts

immaterial." *Celotex Corp.*, 477 U.S. at 322-23.

As provided for in subdivisions (a) and (b) of Rule 56 of the Federal Rules of Civil

Procedure, any party may move for summary judgment without regard to whether the movant is

a claimant or a defending party.  FED. R. CIV. P. 56 (a)-(b).  On cross-motions for summary

judgment, the court examines each party's motion independently, viewing the evidence and

11

inferences in the light most favorable to the nonmoving party.  *White Buffalo Ventures, LLC v. University of Tex. at Austin*, 420 F.3d 366, 370 (5th Cir. 2005); *accord Ford Motor Co. v. Texas Dep't of Transp.*, 264 F.3d 493, 498 (5th Cir. 2001).  Cross-motions for summary judgment will not, in and of themselves, warrant the granting of summary judgment unless one of the parties is entitled to judgment as a matter of law.  *Joplin v. Bias*, 631 F.2d 1235, 1237 (5th Cir. 1980); *Bricklayers, Masons, & Plasterers Int'l Union of Am. v. Stuart Plastering Co.*, 512 F.2d 1017, 1023 (5th Cir. 1975).  The rationale for this rule is that each party may move for summary judgment using different legal theories that rely upon different sets of material facts.  *Id*. Nonetheless, cross-motions for summary judgment may be probative of the absence of a factual dispute when they reveal a basic agreement concerning what legal theories and material facts are dispositive.  *See* FED. R. CIV. P. 56(c); *see also Bricklayers, Masons, & Plasterers Int'l Union of Am.*, 512 F.2d at 1023.

B.    The Sundarams' Motion for Partial Summary Judgment

The Sundarams request that the court enter a partial summary judgment finding that Nemeth is obligated to pay one-third of the cost of the repairs and renovations to the hotel, including capital expenditures, required by Holiday Franchising in the PIP and Temporary Removal Agreement.  Nemeth opposes such a ruling, contending that partial summary judgment on this issue is not appropriate because it would amount to a declaratory judgment regarding the terms of the Agreement—relief not sought by the Sundarams in their complaint.  Construing the motion as one for summary judgment on the Sundarams' breach of contract claim, Nemeth asserts a variety of defenses and contends that genuine issues of material fact preclude summary judgment in the Sundarams' favor.  In particular, he argues that the Sundarams did not provide him with

12

proper notice as contemplated in Section 4.2 of the Agreement and that they breached other provisions of the Agreement, thereby excusing his alleged nonperformance.

As an initial matter, the court observes that the Sundarams' contention that Article 4 of the Agreement encompasses capital expenditures appears to have merit.  As expressly written in the Agreement, the Sundaram family and the Nemeth family agreed to "apportion *all* debts and expensed [sic] that they incur in connection with the Property ("Property Expenses") in proportion to their respective ownership interests" (emphasis added).  Thus, the court agrees with the Sundarams that the renovations and repairs to the hotel are governed by the plain language of Section 4.1 of their Agreement with Nemeth.  Moreover, the Agreement between the parties and the original contracts with Holiday Franchising were all signed on July 23, 2004, indicating that the improvements to the hotel were a contemplated part of the parties' dealings.

Nevertheless, the Sundarams did not seek a declaratory judgment concerning Nemeth's obligations under the contract, and the court cannot grant partial summary judgment on their breach of contract claim because they have not met their burden of showing that no genuine issue of material fact exists and that they are entitled to judgment as a matter of law as to that claim. Specifically, disputed issues remain concerning Nemeth's alleged liability to the Sundarams, including, for example, whether the Sundarams complied with the notice requirements set forth in Article 4 and whether they materially breached other provisions of the Agreement, thereby excusing Nemeth's nonperformance.  Therefore, the court concludes that the Sundarams' motion for partial summary judgment should be denied.

C.    Nemeth's Motion for Partial Summary Judgment

In his cross-motion for partial summary judgment, Nemeth requests that the court find that he could not have become a defaulting co-tenant under the Agreement because his only obligation to contribute funds was, upon proper notice, to pay his share of those property expenses incurred that could not be paid by cash or property on hand—not funds for future expenses that had not yet been incurred.  He further argues that the Sundarams, as individuals, cannot make a co-tenant loan pursuant to Section 4.5 because they are not the proper co-tenants under the Agreement.  The Sundarams respond that their payment requests were for expenses that had been incurred within that term's common and ordinary meaning.  They also contend that they are proper parties to make a co-tenant loan to Nemeth under the Agreement.

1.    The Sundarams as Co-Tenants

Nemeth asserts that the Sundarams, as individuals, are not co-tenants under the Agreement and, therefore, cannot extend a co-tenant loan.  Specifically, Nemeth alleges that the proper co-tenant is the Sundaram Trust.  Indeed, the Sundarams concede that the special warranty deed conveying the property to the parties lists the Sundarams, as co-trustees of the Sundaram Trust, as owning two-thirds of the property.  The Sundarams, however, dispute Nemeth's characterization of the relationship between the parties, stating that their Agreement expressly lists the co-tenants as the Ron Nemeth Family and the Sundaram Family.  Thus, Plaintiffs argue, they are able to make a co-tenant loan because they are members of the Sundaram family.  The court agrees and finds that Nemeth's argument lacks merit.  Without regard to the language appearing on the deed, the parties' Agreement governing the ownership and management of the property lists the Sundaram Family as the co-tenant and is signed by T.M. Sundaram on behalf of the family of

14

T.M. Sundaram.   Therefore, the court rejects Nemeth's contention that the Sundarams, as individuals, cannot make a co-tenant loan pursuant to Section 4.5 of the Agreement between the parties.

### 2.     Nemeth as a Defaulting Co-Tenant

Nemeth next contends that partial summary judgment in his favor is warranted because he could not have become a defaulting co-tenant under the parties' Agreement.   In particular, he asserts that (1) he had no obligation to provide funds for future budgeted items but only for one-third of those debts and expenses already incurred and (2) the Sundarams failed to comply with the notice requirements set forth in Article 4 of the Agreement.

Nemeth first maintains that the Sundarams' payment requests were related to amounts for future expenses not yet incurred, for which he was not responsible under Section 4.1.   The Sundarams, on the other hand, contend that the expense of repairing and renovating the hotel was incurred when the Sundarams signed the contracts with Holiday Franchising to complete the improvements as a condition of holding their license to operate as a Holiday Inn.   They further argue that Nemeth himself incurred these expenses when he guaranteed to Holiday Franchising that the Sundarams would comply with the contract requirements.

A federal court, sitting in diversity, applies Texas law in the interpretation of contracts. *See H.E. Butt Grocery Co. v. National Union Fire Ins. Co. of Pittsburgh*, 150 F.3d 526, 529 (5th Cir. 1998) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78-79 (1938)).   An unambiguous contract must be interpreted by the court as a matter of law.  *See SAS Institute, Inc. v. Breitenfeld*, 167 S.W.3d 840, 841 (Tex. 2005) (citing *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983)); *Sefzik v. Mady Dev., L.P.*, 231 S.W.3d 456, 460 (Tex. App.—Dallas 2007, no pet.); *Broesche*

*v. Jacobson*, 218 S.W.3d 267, 271 (Tex. App.—Houston [14th Dist.] 2007, pet. denied); *Startex First Equip., Ltd. v. Aelina Enter., Inc.*, 208 S.W.3d 596, 600 (Tex. App.—Austin 2006, pet. denied). "Contract terms are given their plain, ordinary, and generally accepted meanings unless the contract itself shows them to be used in a technical or different sense." *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 662 (Tex. 2005) (citing *Heritage Resources, Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex. 1996)); *accord BACM 2001-1 San Felipe Rd. Ltd. P'ship v. Trafalgar Holdings I, Ltd.*, 218 S.W.3d 137, 147 (Tex. App.—Houston [14th Dist.] 2007, pet. denied).

The court's primary concern in construing a contract is to give effect to the written expression of the parties' intent. *Certain Underwriters at Lloyd's v. Oryx Energy Co.*, 203 F.3d 898, 901 (5th Cir. 2000) (citing *Coker*, 650 S.W.2d at 393); *Seagull Energy E & P, Inc. v. Eland Energy, Inc.*, 207 S.W.3d 342, 345 (Tex. 2006); *Valence Operating Co.*, 164 S.W.3d at 662; *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003); *Quality Infusion Care, Inc. v. Health Care Serv. Corp.*, 224 S.W.3d 369, 379 (Tex. App.—Houston [1st Dist.] 2006, no pet.). "The cardinal rule to be observed in the construction of contracts is to ascertain and give effect, whenever possible, to the intention of the parties, as that intention is revealed by the language used in the agreement." *Lacy v. Ticor Title Ins. Co.*, 794 S.W.2d 781, 786 (Tex. App.—Dallas 1990, writ  withdrawn) (citing *Birdwell v. Ferrell*, 746 S.W.2d 338, 339-40 (Tex. App.—Austin 1988, no writ)).

When construing a contract, the intention of the parties is to be gathered from the instrument as a whole. *See Seagull Energy E & P, Inc.*, 207 S.W.3d at 345; *SAS Institute, Inc.*, 167 S.W.3d at 841; *J.M. Davidson, Inc.*, 128 S.W.3d at 229. The "court is bound to read all parts of a contract together to ascertain the agreement of the parties." *Forbau v. Aetna Life Ins.*

*Co.*, 876 S.W.2d 132, 133 (Tex. 1994); *accord Harvey v. Harvey*, 905 S.W.2d 760, 764 (Tex. App.—Austin 1995, no writ). "'No single provision taken alone will be given controlling effect; rather, all the provisions must be considered with reference to the whole instrument.'" *SAS Institute, Inc.*, 167 S.W.3d at 841 (quoting *Coker*, 650 S.W.2d at 393); *accord Seagull Energy E & P, Inc.*, 207 S.W.3d at 345; *J.M. Davidson*, 128 S.W.3d at 229. This is merely an application of the long-established rule in Texas that "'[n]o one phrase, sentence, or section [of a contract] should be isolated from its setting and considered apart from the other provisions.'" *Forbau*, 876 S.W.2d at 134 (quoting *Guardian Trust Co. v. Bauereisen*, 121 S.W.2d 579, 583 (Tex. 1938)).

Where, as here, a contract is worded so that a court can give it a certain or definite legal meaning or interpretation, it is not ambiguous. *See J.M. Davidson, Inc.*, 128 S.W.3d at 229; *Coker*, 650 S.W.2d at 393; *Quality Infusion Care, Inc.*, 224 S.W.3d at 379. When a contract is unambiguous, extrinsic evidence "'will not be received for the purpose of creating an ambiguity or to give the contract a meaning different from that which its language imports.'" *Skyland Developers, Inc. v. Sky Harbor Assocs.*, 586 S.W.2d 564, 568 (Tex. Civ. App.—Corpus Christi 1979, no writ) (quoting *Universal C.I.T. Credit Corp. v. Daniel*, 243 S.W.2d 154, 157 (Tex. 1951)); *accord Lewis v. East Tex. Fin. Co.*, 146 S.W.2d 977, 980 (Tex. 1941). The court must enforce the unambiguous language in a contract as written, and the applicable standard is the "objective intent" evidenced by the language used, rather than the subjective intent of the parties. *See Sun Oil Co. v. Madeley*, 626 S.W.2d 726, 731-32 (Tex. 1981).

In the case at bar, the parties' Agreement defines "property expenses" as "all debts and expensed [sic] that [the co-tenants] incur in connection with the Property." Because the word

17

"incur" is not defined in the Agreement, the court gives that term its "plain, ordinary, and generally accepted" meaning. *Valence Operating Co.*, 164 S.W.3d at 662. "The term 'incur' generally means 'become liable or subject to' or 'become liable to pay.'" *United Servs. Auto. Ass'n v. Gordon*, 103 S.W.3d 436, 443 (Tex. App.—San Antonio 2002, no pet.) (citing *Quick v. City of Austin*, 7 S.W.3d 109, 133 n.2 (Tex. 1998); *Keever v. Finlan*, 988 S.W.2d 300, 308 (Tex. App.—Dallas 1999, pet. dismissed)); *accord Beasley v. Peters*, 870 S.W.2d 191, 196 (Tex. App.—Amarillo 1994, no writ). Moreover, where, as here, the word "incur" is used in the context of debts and expenses, the court finds "become liable to pay" to be a particularly appropriate definition.

In light of the above finding, the court is unpersuaded by the Sundarams' contention that the parties became liable for all of the expenses related to renovating the hotel when the parties signed the contracts with Holiday Franchising. In the event that the improvements to the hotel were not timely completed, the parties would lose their license to operate the hotel as a Holiday Inn; they would not be liable to pay Holiday Franchising for the uncompleted work. Rather, the court finds that the more appropriate interpretation of Section 4.1 is that expenses and debts are incurred when the parties actually become liable to pay such expenses, such as when a contract has been signed with a vendor obligating payment or when work has been completed by a subcontractor. The court observes, however, that the Agreement does not contain any language expressly requiring or implying that such incurred debts or expenses actually be paid prior to TMS seeking funds from the co-tenants.[3]

---

[3] In contrast, when a contract provision contains the term "reimbursement" in conjunction with "incur," such language "'necessarily implies that something has been paid which requires compensation for money spent.'" *Foulston Siefkin LLP v. Wells Fargo Bank of Texas N.A.*, 465 F.3d 211, 215 (5th Cir.

Here, the court concludes that the Sundarams have failed to raise a genuine issue of material fact that the funds sought by TMS in August 2006 were intended to cover incurred expenses.  In support of his motion, Nemeth submitted the e-mail and spreadsheet attachment sent by Prakash on August 1, 2006.  According to the figures listed on the spreadsheet, the projected cost of the improvements at that time totaled $468,895.49.[4]  It is clear that some expenses had been incurred by that time because the spreadsheet lists $45,944.15 in pending bills.  Nevertheless, the document also shows that the parties had a total of $113,458.53 in two savings accounts, which would have been sufficient to pay for those incurred expenses.  As provided in the parties' Agreement, notices for additional funds were appropriate only when the incurred expenses "must be paid in an amount which exceeds the Co-tenant's share of income from the property then held by the agent."

In response to Nemeth's motion, the Sundarams have failed to produce any evidence showing that the funds they requested were intended to cover previously incurred expenses.  To the contrary, Prakash submitted a Declaration to the court stating that "[a]ll of the expenses shown on the spreadsheets furnished to Nemeth in the summer of 2006 regarding the costs for doing the renovations to the Hotel . . . were made by [TMS] in good faith and represented [TMS's] best estimates of how much the various items would cost."  Declaration of Prakash Sundaram ¶ 6.  Prakash also acknowledged that TMS was reluctant to contract for larger items without sufficient funds, thereby demonstrating that said expenses were not yet "incurred" within that term's plain,

------------------------------------------------

2006) (quoting *United States v. Upton*, 91 F.3d 677, 682 & n.8 (5th Cir. 1996)).

[4] Specifically, $689,199.27 minus the $220,303.78 that TMS allocated toward their 15% contractor fee.

ordinary, and generally accepted meaning.  Thus, the only evidence submitted by the Sundarams with their response supports, rather than refutes, Nemeth's contention that all of the funds requested in August 2006 were for future budgeted items.

Because the Sundarams have failed to raise a genuine issue of material fact that the funds they demanded were for incurred expenses in excess of the cash or property on hand, their notice to Nemeth was premature.  Therefore, although the expenses associated with renovating the hotel may have been ultimately incurred, Nemeth did not become a defaulting co-tenant in August 2006, and the Sundarams were not permitted to force a co-tenant loan upon him at that time. Consequently, Nemeth is entitled to summary judgment with respect to the Sundarams' breach of contract claim based on the August 2006 request for additional funds.

III.    Conclusion

In light of the foregoing conclusions, the Sundarams' Motion for Partial Summary Judgment is DENIED, and Nemeth's Motion for Partial Summary Judgment is GRANTED. Specifically, Nemeth is entitled to judgment as a matter of law with respect to the Sundarams' breach of contract claim stemming from the August 2006 demand for payment.  All other claims between the parties in this cause of action remain pending.

SIGNED at Beaumont, Texas, this 4th day of January, 2008.

_Marcia A. Crone_

MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE

20